Matthias, J.
The ordinance in question was passed under authority of Section 614-51, General Code. That section also provides that the requirements and orders of the city council, respecting additions and extensions by public utilities, shall be subject to review by the public utilities commission.
Upon the hearing of this matter considerable evidence was adduced before the commission, and it viewed the territory and inspected the proposed route and also observed the operation of cars over the Warsaw avenue route.
*334 This proceeding comes into this court by virtue of Section 544, General Code, which provides that “A final order made by the commission shall be reversed, vacated or modified by the supreme court, on a petition in error, if upon consideration of the record such court is of the opinion that such order was unlawful and unreasonable.”
Under Section 542 of the General Code such order of the commission must be regarded as prima facie reasonable. It is to be borne in mind then, at the threshold of our consideration of this case, that the presumption obtains of regularity of the proceedings of the public utilities commission, and that its conclusions were fully justified by the evidence before it. If, therefore, it does not appear from the record that the order made herein by the public utilities commission was an unlawful and an unreasonable one it is the duty of this court to affirm its action.
Apparently there is no contention before the commission as to the real necessity for the provision of additional service to meet the demands of passenger traffic to and from Price Hill, a residence section of the city of Cincinnati. Efforts had been made, both by the city authorities and these companies, to provide some additional service over what is known as the Warsaw-Elberon avenue route, which would require an extension of the Elberon avenue line, now in operation, from Eighth street to Warsaw avenue; but it was impossible to procure the necessary consent of property owners *335 along that section of Elberon avenue. Hence the relief sought could not be obtained over that route.
In the hearing before the commission apparently all questions were eliminated save that of danger growing out of the operation of the proposed line from Wilder avenue to Seton avenue. Two elements of danger of operation were presented to •and considered by the commission. The evidence shows that Glenway avenue for a distance of fifteen hundred feet above its intersection with Wilder avenue has a nine per cent, grade, and that portions thereof have been built upon filled ground, by reason of which condition slides have become apparent. Skilled experts, who had examined and investigated the conditions with care, testified that if the proposed double-track line be constructed the added weight would inevitably make such sliding of the street more frequent and more pronounced, and would render the operation of cars thereon dangerous.
The other element of difficulty and danger arises from the necessary operation of the proposed line over the “balloon loop,” an ingenious combination of tracks of balloon shape at the intersection of Glenway avenue and Wilder avenue where the Warsaw avenue line makes such a sharp turn that this arrangement of tracks is required.
The operation of the proposed Glenway avenue line would require that the outgoing cars cross the “balloon loop” at two intersections and, under the proposed method of operation, the inbound cars would take their course over what is now a part of *336 this “balloon loop” track. Then all cars over the proposed line, as well as those over the Warsaw avenue line, would pass either over or through the “balloon loop.”
Under the present operation, during the best weather conditions, the number of cars passing through the “balloon loop” and which must use the same piece of track, is from sixty to seventy per hour, which the evidence shows is as many as may safely be operated under present conditions.
The proposed line would not afford any relief unless more cars be used than are now employed. If more cars cannot be safely used through the loop it seems clear that the danger would be augmented somewhat by taking cars across the loop, and at the same time continue the required operation of cars over the Warsaw avenue line.
The record shows that the proposed Glenway avenue line would strike the “balloon loop” at a grade of nine per cent, and that such grade extends fifteen hundred feet above the loop. From the evidence before them, and actual inspection of the situation, the members of the commission found the conditions at that point to be such that an order that would cause further congestion would entail a hazard that should not be imposed.
It was contended by the city that the dangers of operation on account of the steep grade could be obviated, or at least minimized, by placing a derailing switch four hundred feet above the “balloon loop.” If that be done there would still be a nine per cent, grade extending to the “balloon loop.” It *337 was found by the commission that in most of this distance of four hundred feet it would not be possible for the motorman to see far across the “balloon loop” and up the other side and observe Warsaw avenue cars coming down.
There was evidence that the sliding of Glenway avenue could be prevented by the erection of retaining walls, and it is contended that the commission should have entered a decree approving the ordinance upon the condition that the city construct the necessary retaining walls. The record does not disclose evidence from which the commission could have determined the character, size or location of retaining walls necessary to prevent sliding of the street. It was suggested during the hearing that such requirement be made of the city, but the statute authorizing a review of such ordinance by the public utilities commission does not confer upon the commission any power to legislate for the city or to require the municipal authorities to construct any improvement or exact the performance of any duty by them. Jurisdiction is conferred upon the commission to hear and determine whether the requirements and orders of the council, as to additions and extensions by public utilities, are unjust and unreasonable. These requirements were embraced in the ordinance and were brought into question by the complaint of the street railway companies. Under its terms, plans of construction of these extensions are required to be submitted by the companies within seventy days and the work of construction to begin within forty days after the ap *338 proval of such plans. When the issue was made before the commission it was authorized to inquire into conditions affecting* the matter of the proposed extension and pass upon the justness and reasonableness of the requirements of the ordinance. It had no other duty and can exercise no further power in relation to such matter. It is authorized only to pass upon conditions presented by the evidence and to determine whether or not such ordinance is, in its requirements, just and reasonable, and whether it should be enforced against such public service companies.
It is urged too that the court may, and should, modify the order of the commission in the regard stated, but there is no evidence in the record upon which, if authorized, the commission or this court could base such conditional decree approving said ordinance. Furthermore, the erection of retaining walls would not meet the second serious element of danger found by the commission rendering the proposed extension impracticable — the increased operation of cars through the “balloon loop.”
From a consideration of the record it cannot be concluded that the order of the commission is unjust or unreasonable. It is, therefore, affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Wanamaker, Newman and Jones, JJ., concur.